IN RE:                                                          BK 06-71277-CMS-13

**RANDALL JUSTIN ROBERTS,**

      **DEBTOR.**

## MEMORANDUM OF DECISION

This matter came before the court on confirmation of debtor Randall Justin Roberts' proposed Chapter 13 plan and related matters, including Contemporary Mitsubishi's objection to confirmation on "good faith" grounds; and Roberts' objections to classification of Mitsubishi's $5,136.16 claim. After reviewing the evidence in the context of applicable law, the court finds that the debtor's plan must be **CONFIRMED;** and Contemporary's objection must be **OVERRULED**.

## FINDING OF FACTS

Randall Justin Roberts (Roberts) purchased a 1996 Pontiac from Contemporary Mitsubishi/AKA/ Contemporary Imports (Contemporary) in late February or early March of 2005 for a sales price of $5,990.00. Roberts paid $1,500.00 down on the car, with monthly payments to be $214.88 per month. Roberts testified that he was employed at the time. The debtor made two payments on the car for March and April of 2005.

Then, on April 28, 2005, he was arrested after an attempt to fill a forged prescription at a Shelby County, Alabama pharmacy. The pharmacist had recognized Roberts because he had done the same thing there approximately a year before. The debtor said he was eventually charged with possession of a forged instrument in connection with the first prescription which the pharmacist still had on file. Helena police pulled him over in the Pontiac after he left the drugstore. The car was impounded at Wheeler Garage in Helena, Alabama.

Roberts was unable to post bail and stayed in jail for three months. The car remained in impound where it was accruing storage charges. At a hearing on November 21, 2006, the debtor and his mother testified that the debtor's brother John did call Contemporary Mitsubishi to let them know where the car was while Roberts was still in jail. However, Torrey Cochrane, president of

1

Contemporary, testified at the same hearing that he did not learn of the car's location until August of 2005. Roberts was eventually released on August 16, 2005. He said he contacted Contemporary about the car that same day.

By August 16, 2005, approximately $1,700. 00 in storage charges had accrued against his Pontiac in favor of the garage. Roberts said that he no longer had a job, and that he had no funds to get the car out of storage himself.

He said he had several conversations with Contemporary about getting the car released, but that Contemporary was unwilling to loan him money to pay the storage charges without additional collateral. He said he was unable to obtain the necessary money from other sources. Cochrane testified that in October of 2005, Contemporary, based on the economics of the situation, decided not to redeem the car from the garage itself. After written notice to Roberts and Contemporary in December of 2005, the car was sold at auction for the storage charges.

Roberts filed his Chapter 13 bankruptcy petition on September 12, 2006. His original plan proposed to treat Contemporary as an unsecured creditor, to be paid at 14% with all other unsecured creditors (BK Doc. 3). After his Section 341 meeting, the payments to unsecured creditors were raised to 27%, based on Trustee C. David Cottingham's computation.

On October 20, 2006, Contemporary filed an **OBJECTION TO CONFIRMATION** (BK Doc. 19) of the plan alleging:

> Debtor fraudulently secured the collateral from Creditor, negligently, fraudulently and intentionally destroyed the collateral and breached his agreement with the creditor. ...

On October 27, 2006, Roberts filed a MOTION TO VALUE SECURITY (BK Doc. 23) at zero for purposes of his Chapter 13 case, since he no longer had possession of the vehicle; and a MOTION TO SURRENDER (BK Doc. 24) any interest he had in the vehicle. On October 30, 2006, the debtor also filed an **OBJECTION TO CLASSIFICATION OF CLAIM** (BK Doc. 27) asking the court to hold that Contemporary's $5,136.16 claim, filed as secured, was unsecured, and to allow it as unsecured for distribution.

These contested matters were scheduled for hearing, along with confirmation of Roberts' plan, on November 21, 2006. After the hearing, on November 27, 2006, the court entered an order

(BK Doc. 33) determining the value of the collateral to be zero for Chapter 13 purposes, as sought in BK Doc. 23.

The gist of Contemporary's objection/argument is that Roberts failed to disclose to them when he purchased the automobile that he intended to use it for criminal purposes; and, thus, his criminal conduct caused Contemporary's loss on its contract transaction. The debtor denied that he had any such intention at the time of the sale, and asserted that he lost the automobile because he could not make bail for three months, and then could not afford to pay the storage fee when he was finally released.

Contemporary's objection contended that the debtor's conduct constitutes bad faith in the meaning of Section 1325(a), and that the court should refuse to confirm his plan. At the close of the hearing, the court gave the parties until December 5, 2006 to submit post-trial letter briefs. The court took the case under submission for a decision as of December 5, 2006.

## CONCLUSIONS OF LAW

The court has jurisdiction of debtor Randall Justin Roberts' Chapter 13 case pursuant to 28 U.S.C. § 1334(a). The court has jurisdiction of these contested matters, core bankruptcy proceedings under 28 U.S.C. §§ 157(b)(2)(B) and (L), pursuant to 28 U.S.C. § 1334(b). Jurisdiction is referred to this Bankruptcy Court by the General Order of Reference of the United States District Courts for the Northern District of Alabama, Signed July 16, 1984, As Amended July 17, 1984.

## I.

### In the Eleventh Circuit, courts apply a totality of the circumstances test to determine if a Chapter 13 debtor has proposed a plan in "good faith" as required by 11 U.S.C. § 1325(a).

Section 1325(a) of the Bankruptcy Code requires the court to confirm a debtor's plan if all of nine conditions listed in the section are met. Contemporary's objection states the court should refuse to confirm Roberts plan because it does not meet the conditions set out at Sections 1325(a)(3) and (7). Those sections provide the following:

(a) Except as provided in subsection (b), the court shall confirm a plan if – ...

(3) the plan has been proposed in good faith and not by any means forbidden by law;
...

3

(7) the action of the debtor in filing the petition was in good faith; ...

Roberts filed his Chapter 13 case in 2006, and it is subject to the amendments of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) which took effect for cases filed after October 17, 2005. BAPCPA extended the Chapter 13 "good faith" requirement to the debtor's filing of the petition by adding Section 1325(a)(7). Even after the amendments, the code does not specifically define good faith.

In the Eleventh Circuit, lower courts have long applied a totality of the circumstances test to determine good faith – or the absence of good faith. The analytical framework was originally set out in Kitchens v. Georgia Railroad Bank and Trust Company (In re Kitchens), 702 F.2d 885, 888-89 (11th Cir. 1983). That case sets out a non-exclusive list of objective and subjective factors to be considered in a court's "good faith" determination. Those factors include the following:

– Amount of the debtor's income from all sources.
– Living expenses of the debtor and dependents.
– Amount of attorney's fees.
– Probable or expected duration of debtor's plan.
– Motivations and sincerity of debtor in filing Chapter 13.
– Debtor's degree of effort.
– Debtor's ability to earn, and likelihood of fluctuation in income.
– Special circumstances such as inordinate medical expenses.
– The frequency with which the debtor has filed bankruptcy.
– The circumstances under which the debtor has contracted debt; and demonstrated bona fides, or the lack thereof, in dealings with creditors.
– The burden the plan's administration would place on the trustee.
– The extent to which claims are modified and the extent of preferential treatment among classes of creditors.
– The substantiality of repayment to unsecured creditors.
– Consideration of the type of debt to be discharged and whether such debt would be nondischargeable under Chapter 7.
– The accuracy of the plan's statements of debts and expenses and whether any inaccuracies comprise an attempt to mislead the court.

As pointed out in Baxter v. Johnson (In re Johnson), 346 B.R. 256, 261 (Bankr. S.D. Ga. 2006), BAPCPA subsumes the future application of certain of the Kitchens factors. BAPCPA amendments to the disposable income sections of Section 1325(b), new rules on serial filers, and other code requirements may limit such inquiries.

Otherwise, barring specific conflict with the new statute, there is no indication the factors are not still good law in the Eleventh Circuit. For examples of application, see In re Farber, 355 B.R. 362

4

(Bankr. S.D. Fla. 2006); In re Buis, 337 B.R. 243 (Bankr. N.D. Fla. 2006); In re Etheridge, 297 B.R. 810 (Bankr. M.D. Ala. 2003); and In re Vanfossen, 258 B.R. 814 (Bankr. N.D. Ala. 2001).

## II.

### Contemporary has failed to prove bad faith on Roberts part.
### The court must confirm the debtor's plan pursuant to 11 U.S.C. § 1325(a).

Roberts' Chapter 13 is his first bankruptcy case, and Contemporary has made no allegation that he falsified his schedules, the basis for the plan, in any way. The creditor did object to receiving only 27 % of its debt under the plan. However, Roberts' action, under these facts, is allowable under Section 1322(b), which preempts state law rights of all creditors at bankruptcy filing. All of Roberts' unsecured creditors will receive only 27 %. No unsecured creditor (and there are no secured creditors in this case) will get a higher percentage of their former state contract obligation.

In this context, Contemporary's bad faith arguments against confirmation address only two of the Kitchens factors – the circumstances under which Roberts contracted the debt and his bona fides, or lack of bona fides, in dealing with the creditor; and consideration of the type of debt to be discharged and whether it would be nondischargeable in Chapter 7.

Contemporary offered no evidence that Roberts, at the time of the contract in February-March 2005, intended to be implicated in an attempt to pass a forged prescription on April 28, 2005; or that he intended to use the car he was buying for purposes other than transportation, a legal activity. Roberts testified that he had no intention of using the car in any illegal activity when he made the purchase. The court cannot deduce any "lack of bona fides" (bad faith) in the debtor's conduct when he entered the agreement to purchase the car from Contemporary.

Contemporary's arguments generally alleged fraudulent or other wrongful behavior on Roberts part, implicating the second Kitchens factor – whether Contemporary's debt would be nondischargeable in Chapter 7 as opposed to Chapter 13. This argument fails as well based on this record.

The Eleventh Circuit has long required proof that all the elements of common law fraud are present in a transaction for a finding of non-dischargeability under 11 U.S.C. § 523(a)(2):

5

> In order to preclude the discharge of a particular debt because of a debtor's false representation, a creditor must prove that the debtor made a false representation with the purpose and intention of deceiving the creditor; the creditor relied on such representation; his reliance was reasonably founded; and the creditor sustained a loss as a result of the representation.

Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986).

Contemporary presented no evidence that the debtor made any false representations to Contemporary, at the time of the contract or later. There was no evidence of a misrepresentation by Roberts at the time the car was purchased. The only evidence concerning the purchase was the sales contract. Therefore, there was no evidence that the debt was procured by fraud, or that fraudulent conduct resulted in the creditor's losses.

Even if the debt had been proven to be incurred by fraud, Chapter 13 debtors may no longer discharge such debts under the amended Section 1328(a)(2) in BAPCPA. The Section 523(a)(2) exception to discharge applies in both Chapter 13 and Chapter 7. There is no longer an advantage for such debtors to file Chapter 13, as opposed to Chapter 7.

However, debts created by willful and malicious conduct under Section 523(a)(6) can still be discharged in Chapter 13, while they are nondischargeable in Chapter 7. If proven, Section 523(a)(6) excepts debts owed: "for willful and malicious injury by the debtor to another entity or to the property of another entity; ...." in Chapter 7 discharge. It does not apply to Chapter 13 discharge. Traditionally, creditors objecting to confirmation on good faith grounds have also pleaded this exception to discharge along with allegations of common law fraud.

The court must examine the evidence offered by Contemporary in light of Section 523(a)(6). The burden of proof to be applied to all Section 523(a) allegations of nondischargeability, including that of Section 523(a)(6), is a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 290-91 (1991). The Supreme Court has also held that an extremely high level of intent must be proven before a court can find such obligations to be procured by "willful and malicious" conduct. See Kawaauhau v. Geiger, 523 U.S. 57 (1998).

"We hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)," the Supreme Court stated. Kawaauhau, 523 U.S. at 64. The Chapter 7

Case 06-71277-CMS13   Doc 36   Filed 03/29/07   Entered 03/29/07 15:42:26   Desc Main
Document     Page 6 of 8

debtor/physician Geiger was attempting to discharge a malpractice judgment under Section 523(a)(6). The case involved a $335,000.00 jury award to Kawaauhau and her husband after lack of proper treatment and neglect turned a minor foot injury into an infection that required amputation of her leg. Dr. Geiger, who carried no malpractice insurance, moved to Missouri where the Kawaauhuas garnished his wages in execution of the judgment. The doctor then filed Chapter 7 bankruptcy.

Nevertheless, the Supreme Court found that the doctor's conduct, including cancelling a subsequent referral that might have saved Mrs. Kawaauhau's leg, did not reach the intent level necessary for a nondischargeability finding under Section 523(a)(6). The court stated:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional <u>injury</u>, not merely a deliberate or intentional <u>act</u> that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, <u>i.e.</u>, "reckless" or "negligent" to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the <u>consequences</u> of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964) (emphasis added).(emphasis added by the Supreme Court)

<u>Kawaauhau</u>, 523 U.S. at 60.

Since this decision was entered in 1998, Congress had another chance to alter this language when it enacted BAPCPA's sweeping amendments in the spring of 2005. Lawmakers chose not do so, although they had spent years deliberating provisions for the new act before its final passage.

The Supreme Court in the 1998 <u>Kawaauhau</u> case, was resolving a split between the Eighth Circuit's interpretation of Section 523(a)(6), and the opposite opinions of the Sixth and Tenth Circuits. Eleventh Circuit precedent had long generally followed the rule established nationally by <u>Kawaauhau</u>. <u>See</u> <u>Hope v. Walker</u> (<u>In re Walker</u>), 48 F.3d 1161 (11th Cir. 1995); <u>Lee v. Ikner</u> (<u>In re Ikner</u>), 883 F.2d 986 (11th Cir. 1989); and <u>Chrysler Credit Corporation v. Rebhan</u>, 842 F.2d 1257 (11th Cir. 1988) (the Supreme Court's 1991 <u>Grogan</u> superseded <u>Rebhan</u> as to the fraud burden of proof only.)

In <u>Walker</u>, the debtor/homebuilder had failed to obtain workers' compensation insurance in violation of Georgia state law. Walker later claimed he did not consider himself to be a "general contractor" in the meaning of Georgia law, and that he believed his workers were responsible for their

Case 06-71277-CMS13   Doc 36   Filed 03/29/07   Entered 03/29/07 15:42:26   Desc Main
Document      Page 7 of 8

own insurance. Walker hired Hope to do construction work on a house he was building. Hope fell on the job breaking his forearm and elbow; and incurring medical expenses, lost wages, and permanent partial disability. Hope sued Walker. Subsequently, the State Board of Workers' Compensation granted him $27,939.41 disability costs and other damages; and "reasonable future medical costs," stemming from the injury. Walker filed Chapter 7 bankruptcy after paying only a small part of the judgment, and Hope filed a Section 523(a)(6) non-dischargeabillity action against him.

The Eleventh Circuit stated the following in 1995:

Because Congress reenacted section 523(a)(6) (in the Bankruptcy Act of 1978) in the context of the common law, we conclude that a debtor is responsible for a "willful" injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury. ... Applying the rule in this case, it is clear that Hope's physical injury was not substantially certain to result from Walker's failure to obtain workers' compensation insurance. While Walker's failure to act did result in Hope's lack of coverage after the latter's accident, it cannot be said that Walker intended for Hope to suffer a fall or that there was an unbroken chain of events leading from Walker's intentional act to Hope's physical injury.

Walker, 48 F.3d at 1165.

In the Roberts case, Contemporary has failed to adduce any evidence that the debtor by his actions intended any injury to the car dealer. There is no evidence of any bad faith on the part of Roberts in the meaning of 1325(a)(3) and (a)(7) in his filing of his petition or in the plan he proposed.

**CONCLUSION**

The debtor Randall Justin Roberts' proposed Chapter 13 plan must be **CONFIRMED,** with a 27 % distribution to unsecured creditors. Creditor ContemporaryMitsubishi/AKA/Contemporary Imports' objection to confirmation on bad faith grounds must be **OVERRULED**.

An order, consistent with these findings pursuant to Fed. R. Bankr. P. 7052, will be entered separately. (Another separate order will confirm Roberts' Chapter 13 plan.)

**DONE and ORDERED** this March 29, 2007.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge